Citation Nr: 1550157 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 10-10 408 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office in Nashville, Tennessee


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for chronic bronchitis.

2. Entitlement to service connection for an acquired psychiatric disorder, including post-traumatic stress disorder (PTSD), anxiety disorder, and major depressive disorder.

3. Entitlement to service connection for a low back disorder.

4. Entitlement to service connection for deafness in the right ear.


REPRESENTATION

Appellant represented by: Penelope E. Gronbeck, Attorney at Law


ATTORNEY FOR THE BOARD

Suzie Gaston, Counsel


INTRODUCTION

The Veteran served on active duty from September 1977 to December 1977 and from February 1981 to July 1982. 

This matter comes before the Board of Veterans' Appeals (hereinafter Board) on appeal from a March 2009 rating decision issued by the Nashville, Tennessee, Regional Office (RO), which denied the Veteran's attempt to reopen his claim of entitlement to service connection for bronchitis. That decision also denied claims of entitlement to service connection for depression, a low back disorder, and deafness in the right ear. 

In June 2014, the Board remanded the case for additional evidentiary development and consideration. The Appeals Management Center (AMC) completed the requested development and issued a supplemental statement of the case (SSOC) in May 2015. Review of the record reflects substantial compliance with the Board's remand directives. Stegall v. West, 11 Vet. App. 268 (1998). 

The Board notes that when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled. As such the Board has recharacterized the issue of entitlement to service connection for depression as entitlement to service connection for an acquired psychiatric disorder. See Clemons v. Shinseki, 23 Vet. App. 1 (2009). 

The Board notes that this appeal has been processed through the Veterans Benefits Management System (VBMS) electronic claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. 

The issue of entitlement to service connection for deafness (hearing loss) of the right ear is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. 


FINDINGS OF FACT

1. By a rating action in July 1991, the RO denied the Veteran's claim of entitlement to service connection for bronchitis. The Veteran did not perfect an appeal to that decision, and no new and material evidence was received within one year of its issuance. 

2. Evidence submitted since the July 1991 decision is cumulative or redundant of evidence previously considered and, by itself or when considered with previous evidence of record, does not relate to an unestablished fact necessary to substantiate the Veteran's claim for service connection for bronchitis. 

3. The Veteran has a personality disorder, which is not recognized as a disability pursuant to VA regulation. 

4. The preponderance of the competent evidence is against a finding that the Veteran has any current acquired psychiatric disorder, to include PTSD, anxiety, and major depressive disorder, that is etiologically related to his period of service. 

5. A chronic low back disorder was not manifested during the Veteran's active military service or for many years thereafter; nor is there competent evidence relating any current low back disorder to service. 





CONCLUSIONS OF LAW

1. The evidence received since the July 1991 rating decision, denying service connection for bronchitis, is not new and material; therefore, the claim is not reopened. 38 U.S.C.A. §§ 5108, 7105 (West 2014); 38 C.F.R. § 3.156(a) (2014). 

2. A personality disorder is not a disease or injury within the meaning of the law providing for compensation benefits. 38 C.F.R. §§ 3.303, 4.9, 4.127 (2014). 

3. The Veteran does not have an acquired psychiatric disorder, to include PTSD, anxiety disorder, and major depressive disorder, that is the result of disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309 (2014). 

4. A chronic low back disorder was not incurred in or aggravated by military service, and may not be presumed to have been so incurred. 38 U.S.C.A. §§ 1110, 1111, 1153, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist.

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits, as codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2014). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim; and to indicate which information and evidence VA will obtain and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). The United States Court of Appeals for Veterans Claims has held that VCAA notice should be provided to a claimant before the initial RO decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, if VCAA notice is provided after the initial decision, such a timing error can be cured by subsequent readjudication of the claim, as in an SOC or Supplemental SOC (SSOC). Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). In a new and material evidence claim, the notice must include the evidence and information that is necessary to reopen the claim and the evidence and information that is necessary to substantiate the underlying claim of service connection. Kent v. Nicholson, 20 Vet. App. 1 (2006). 

In this case, VA satisfied its duty to notify by means of a letter dated in October 2008 from the RO to the Veteran, which was issued prior to the RO decision in March 2009. An additional letter was issued in June 2009. Those letters informed the Veteran of what evidence was required to substantiate the claims, and of his and VA's respective duties for obtaining evidence. The letters also explained the criteria for new and material evidence and set forth the basis of the last final denial, as required under Kent. Accordingly, the requirements the Court set out in Pelegrini have been satisfied. 

The Board finds that the content of the above-noted letters provided to the Veteran complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) regarding VA's duty to notify. 

Regarding the duty to assist, the Veteran was provided an opportunity to submit additional evidence. It also appears that all obtainable evidence identified by the Veteran relative to his claims has been associated with the claims file, and that neither he nor his representative has identified any other pertinent evidence not already of record that would need to be obtained for a proper disposition of this appeal. It is therefore the Board's conclusion that the Veteran has been provided with every opportunity to submit evidence and argument in support of his claims, and to respond to VA notice. 

The Veteran has been afforded VA examinations on the issues decided herein. McLendon v. Nicholson, 20 Vet. App. 79 (2006). The examinations afforded the Veteran are adequate. Nieves-Rodriguez v. Peake, 22 Vet. App 295 (2008). The examinations were conducted by medical professionals who reviewed the medical records, solicited history from the Veteran and examined the Veteran. 

Accordingly, the Board finds that VA has satisfied its duty to notify and assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence pertinent to his claims under the VCAA. Therefore, no useful purpose would be served in remanding the questions addressed herein for yet more development. Such a remand would result in unnecessarily imposing additional burdens on VA, with no additional benefit flowing to the Veteran. The Court has held that such remands are to be avoided. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

II. Law and Regulations.

When a claimant fails to timely appeal an RO decision denying his claim for benefits, that decision becomes final and can no longer be challenged. See DiCarlo v. Nicholson, 20 Vet. App. 52, 55 (2006) (Except as provided by law, when a case or issue has been decided and an appeal has not been taken within the time prescribed by law, the case is closed, the matter is ended, and no further review is afforded.). However, pursuant to 38 U.S.C. § 5108, if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

For the purpose of establishing whether new and material evidence has been received, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

III. Factual background.

The records indicate that the Veteran served on active duty from September 1977 to December 1977 and from February 1981 to July 1982. The Veteran was seen in service in September 1977 for complaints of shortness of breath with productive cough; the assessment was bronchitis. He was placed on profile due to bronchitis. In October 1977, the Veteran complained of back pain of a 2 day duration; he reported falling out of his bunk and landing on his back. He also reported trouble voiding. The assessment was R/O urinary tract infection (UTI) with muscle contusion. Another treatment report in October 1977 reflects a diagnosis of muscle strain. On separation examination in December 1977, clinical evaluation of the ears revealed old scarring from otitis on the right drum, with excessive cerumen in the left ear. An audiometric examination revealed pure tone thresholds of 15, 15, 15, 10, 15, and 25 decibels in the right ear at the 500, 1000, 2000, 3000, 4000, and 6000 Hertz. A clinical evaluation was negative for any ear problems. 

The STRs reflect that the Veteran was seen on several occasions in August 1981 for complaints of low back pain. In August 1981, the Veteran reported injuring his low back when he attempted to lift a heavy wall locker; he stated that he felt a pull at that time. He complained of increased pain with forward bending and prolonged sitting. The assessment was probable facet syndrome. The Veteran was next seen in September 1981 with complaints of low back stiffness for the past day with no apparent trauma. The provisional diagnosis was low back strain. In September 1981, he was diagnosed with paraspinal muscle spasm. A treatment report dated in October 1981 indicates that the Veteran was seen at the Community Mental Health Activity Center on three occasions since October 6. 1981. He presented as anxious and depressed due to family problems. Since there was no evidence of psychosis or other significant psychiatric disease, it was cleared for action deemed appropriate by command. Per a February 1982 report, the Veteran had been seen at the clinic from October 6, 1981 to January 15, 1982 for adjustment disorder with depressed mood with fair effect. It was also reported that the Veteran had not returned; as such, the case was closed. A March 1982 record reflects complaints that he could not hear out of his right ear; a wax blockage was noted. On the occasion of an examination in June 1982, clinical evaluation of the spine was normal. An audiometric examination revealed pure tone thresholds of 15, 5, 0, 5, 10, and 5 decibels in the right ear at the 500, 1000, 2000, 3000, 4000, and 6000 Hertz. 

The Veteran's initial claim of service connection for bronchitis (VA Form 21-4138) was received in February 1991. 

By a rating action in July 1991, the RO denied the claim of service connection for bronchitis. This decision was based on a finding that the evidence of record demonstrated two isolated episodes of bronchitis in service that were considered to be acute and transitory, with no chronic residual respiratory disorder found at discharge from service. By letter dated in August 1991, the Veteran was notified of the decision, and of his procedural and appellate rights. 

Received in October 2008 was an application for compensation benefits (VA Form 21-526), wherein the Veteran indicated that he was claiming service connection for chronic bronchitis, degenerative disc disease of the vertebra, depression, and deafness in the right ear. Submitted in support of the claim were private treatment reports from St. Lawrence Hospital and Healthcare Services dated from December 1993 to December 1998. These records show that the Veteran was seen in October 1998 with complaints of headaches and chest tightness. It was noted that he had a past medical history of increased blood pressure, cerebrovascular accident with visual loss, and chronic bronchitis. The assessment was transient hypertension. In November 1998, the Veteran was seen for complaints of chest pain and vomiting; a chest x-ray was negative with no acute pulmonary process seen. A chest x-ray in December 1998 was also negative; it was noted that lung fields were clear. During an evaluation in November 1994, the Veteran indicated that he woke up and was unable to get out of bed, secondary to 2 days of lifting and moving around chain drive and scrap for railroad. It was noted that there was no previous history of a back problem. He was diagnosed with lumbar strain. 

Received in November 2008 were private treatment reports dated from August 2007 to November 2008. The Veteran was seen for a psychiatric evaluation in August 2007, at which time it was reported that he has experienced depression symptoms since his stroke about 10 years ago. It was noted that there was some possible history of manic like symptoms in the military many years ago, but nothing recurrent clearly manic. It was also reported that the Veteran was treated for possible manic depression and anger while serving in the military in the 1980s. Following a mental status examination, the examiner reported a diagnosis of major depression, recurrent, moderate. During another assessment in August 2007, the Veteran was diagnosed with major depressive disorder and anxiety disorder. At that time, it was also reported that the Veteran had a stroke 10 years ago, resulting in blindness in the right eye. It was also noted that he suffered from work-related hearing loss in the right ear, and degenerative disc disease in the back. 

Also submitted in support of the Veteran's claims were private treatment records from Johnson County medical group, dated from August 2007 to February 2009, show continued treatment for a psychiatric disorder and a back disorder. These records show that the Veteran was seen in August 2007 for complaints of cough, congestion and right shoulder pain; he also had fever and chest tightness. The assessment was upper respiratory infection (URI)-bronchitis. In December 2008, the Veteran was referred for an MRI of the lumbar spine due to complaints of back pian with numbness and tingling in the left lower extremity. The study revealed a left lateral disc herniation at S1-S2. It was noted that the S1 nerve root was being displaced posteriorly due to the disc herniation without evidence for nerve root edema. The study also revealed mild diffuse disc bulge at L5-S1, greatest along the left lateral aspect of the disc. A clinic note, dated in February 2009, reflect an assessment of degenerative disc disease. 

Received in June 2014 was a copy of an administrative decision by the Social Security Administration (SSA), dated in December 2008, which found the Veteran to be disabled due to disorders of the back and affective and mood disorders. It was determined that the Veteran had not engaged in substantial gainful activity since August 2006 due to severe impairment caused by numbness in hands and legs, kidney condition, sleep apnea, blindness in one eye, and loss of hearing in one ear. Also received were medical documents used to reach that determination, dated from July 2007 to September 2008. Among the records was the report of an examination conducted by the Tennessee Disability Determination Services, in October 2007. At that time, the Veteran reported having low back pain for the past 5 years. He stated that he pulled his muscles from the base of the skull to his tailbone 14 years ago. He had physical therapy for 3 1/2 months; now, he had pain in the low back from L2 down to L5. The Veteran also reported blindness in the right eye since 1997; he noted that this occurred after he had a stroke, causing him to lose vision in that eye. Following a physical examination, the pertinent diagnoses reported were chronic low back pain and "blindness, left eye." 

The records from SSA also include the results of a psychological evaluation in September 2007. The Veteran indicated that he was status post stroke at age 37, polycystic kidney disease, degenerative disc disease, and bronchitis. He stated that he did not realize at the time that he had suffered a stroke; thus, he was never hospitalized, but a doctor diagnosed it several years later. As a consequence of the stroke, he has limited vision in his right eye and limited hearing in the right ear. The Veteran indicated that he has been going to the Johnson County Counseling Center for the last four months; he sees a counselor there and receives medication evaluation from the psychiatric staff. The Veteran related that, when he was 15 or 16, he saw a counselor in Alabama; however, he denied ever having been hospitalized for psychiatric treatment. At that time, he indicated that his first use of any psychiatric medication was of Wellbutrin, which he initially took at age 20; he stated that, while in the army, he became depressed and received the Wellbutrin at that time. Following a mental status examination, the reported diagnostic impression was major depressive disorder, recurrent, mild. 

The Veteran was afforded a VA examination in July 2014. At that time, he stated that he started having problem with back pain in 1977; he noted that the pain is located in the lower back. The Veteran reported that the injury occurred as a residual of hard jar of landing or landing from a repelling tower. Later, the Veteran stated that he experienced a series of recurrent episodes of back pain. The Veteran indicated that the onset of the chief complaint occurred while on active duty. After discharge, the Veteran stated that he has continued to experience increasing back pain referred bilateral lower extremity numbness/leg weakness and loss of function. The pertinent diagnoses were degenerative disk disease and Intervertebral Disc syndrome (IVDS). The examiner stated that while a back injury occurred in service, the etiology of the Veteran's current back complaints are not supported by the current scientific literature. Based on the review of the above current medical literature there is no scientific evidence that the low back condition is proximally due to the Veteran's service connected back injuries. Therefore, it is less likely as not that the Veteran's complaints of back pain are service connected from back injury. Rather, the examiner stated that, as the current scientific literature indicates multifactorial cause is the probable etiology of the Veteran's back pain. 

The Veteran was also afforded a psychiatric examination in August 2014. It was noted that he had been raised by his mother and step-father. The Veteran reported that his stepfather got intoxicated, beat him and shot at him and other family members. The Veteran indicated that he would have to leave several days at times to stay out of his stepfather's way. The Veteran related that, in between the drinking binges, he and his stepfather had a good relationship. The Veteran stated that his relationship with his mother was strained because she was "needy" and leaned on him more than was appropriate. He reported good relations with his siblings. The Veteran indicated that he got arrested as a youth and was given the choice to probation or go into the military. In the military, he served as a unit supply specialist. It was noted that the Veteran had problems with discipline and conduct. The Veteran reported some problems with depression and anxiety, starting in childhood. He was diagnosed with anxiety disorder in about 9th grade. He admitted that he had trouble with authority and being around males from childhood. The Veteran further reported that he continued to have PTSD like symptoms in the military; he was sent to counseling. The Veteran indicated that he had anger issues. He stated that the pre military problems continued as they had in the military. He denied psychiatric hospitalization of any sort. 

Following a mental status examination, the examiner noted that the Veteran's current diagnoses were PTSD with depressed mood, and other specified personality disorder with antisocial and borderline symptoms. The examiner stated that the PTSD was less likely than not related to, caused by, or permanently aggravated by events, experiences in the military beyond the usual course of the disorder and more likely than not related to trauma in childhood. The examiner noted that abuse in childhood I sufficient to meet criteria A for PTSD and can support a diagnosis of PTSD. He also noted that the Veteran reported a history of PTSD symptoms starting in childhood and continuing to the present time sufficient to qualify for PTSD diagnosis under DSM-IV-TR and DSM-V. The examiner also noted that depression and mood problems other DSM diagnoses and even adjustment disorder can co-exist with PTSD; the symptoms can be comingled as well so this is not consistent specially some providers did not have full history of abuse information. Further, anxiety disorder NOS at times appear to reflect his reports of PTSD symptoms that he reported when he has admitted to childhood trauma. The examiner also opined that other specified personality disorder with borderline and antisocial traits is less likely than not related to, caused by, or permanently aggravated by events/experiences in military beyond the course of the disorder. 

IV. Claim to Reopen.

In this case, the RO denied the Veteran's claim of service connection for bronchitis in July 1991, based on a finding that his in-service symptoms were acute and transitory, with no chronic residual respiratory disorder found at discharge from service. In essence, at the time of the prior decision, there was no competent evidence of a chronic respiratory disorder, namely bronchitis, in service. As such, it was determined that chronic bronchitis was neither occurred in nor caused by service. The Veteran did not appeal that decision. The RO decision is final based on the evidence then of record. See 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1103 (2014). However, as noted above, pertinent law and regulation provide that if new and material evidence has been presented or secured with respect to a claim which has been disallowed, the claim may be reopened and the former disposition reviewed. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a). 

The evidence received subsequent to July 1991 consists of a significant amount of medical records, including private treatment records and VA medical records, which show that the Veteran continued to receive evaluation and treatment for complaints of chest pain, and has been diagnosed with bronchitis. The records also consist of lay evidence continuing to assert that this condition should be awarded service connection. However, while the evidence is new in that it was not considered at the time of the previous denial, it is not material because it does not include any competent evidence showing the presence of chronic bronchitis in service. Moreover, none of the evidence linked the Veteran's bronchitis to his period of service. 

In sum, the evidence added to the record since the July 1991 denial of service connection for bronchitis is not material because, by itself or when considered with previous evidence of record, it does not relate to an unestablished fact necessary to substantiate the claim, and does not present the reasonable possibility of substantiating the claim. The Veteran's assertions that he currently suffers from chronic bronchitis, which is related to service had previously been voiced and were considered by the RO in adjudicating the claim originally; the current assertions are therefore redundant. Accordingly, the Board finds that new and material evidence has not been received, and the Veteran's claim of entitlement to service connection for bronchitis may not be reopened. See 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a) (2014). 

Consequently, the evidence added to the record since the July 1991 denial of service connection for bronchitis is not material because it does not relate to an unestablished fact necessary to substantiate the claim, and does not present the reasonable possibility of substantiating the claim. It neither indicates continuity of symptoms back to service or contains any statements of etiology. Therefore, new and material evidence has not been received and the claim for service connection for chronic bronchitis is not reopened. See 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a) (2014). 

V. Legal Analysis-Service Connection.

Veterans are entitled to compensation if they develop a disability "resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. §§ 1110. To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so- called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Holton v. Shinseki, 557 F.3d 1362 (2009). 

For a showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. If the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b). 

In addition, the law provides that, where a veteran served ninety days or more of active military service, and psychoses become manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id. 

Congenital or developmental defects, refractory error of the eye, personality disorders, and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation. 38 C.F.R. §§ 3.303(c), 4.9 (2014). 

To establish entitlement to service connection for PTSD, the record must contain the following: (1) medical evidence diagnosing PTSD; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a link between current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304(f); see also Cohen v. Brown, 10 Vet. App. 128 (1997). 

A diagnosis of PTSD must be established in accordance with 38 C.F.R. § 4.125(a) , which mandates that, for VA purposes, all mental disorder diagnoses must conform to the American Psychiatric Association 's Diagnostic and Statistical Manual for Mental Disorders, 4th ed. (DSM-IV). 38 C.F.R. § 3.304(f). The Court of Appeals for Veterans Claims (Court) has taken judicial notice of the mental health profession's adoption of the DSM-IV. Cohen, supra. According to the current criteria, a diagnosis of PTSD requires exposure to a traumatic event, or stressor. A stressor involves exposure to a traumatic event in which the person experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others, and the person's response involved intense fear, helplessness, or horror. The sufficiency of a stressor is a medical determination, and the occurrence of a claimed stressor is an adjudicatory determination. Id. 

Furthermore, the pertinent regulation provides that, if the evidence establishes that the veteran engaged in combat with the enemy and that the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. See 38 U.S.C.A. §§ 1154(b); 38 C.F.R. § 3.304(f) (1). However, in order to grant service connection for PTSD to a non-combat veteran, there must be credible evidence to support the veteran's assertion that the stressful event occurred. A medical opinion diagnosing PTSD does not suffice to verify the occurrence of the claimed in-service stressors. Cohen v. Brown, supra, at 142; Moreau v. Brown, 9 Vet. App. 389, 395-396 (1996). 

The VA regulation at 38 C.F.R. § 3.304(f) was recently amended to liberalize the requirement of verification or corroboration of a veteran's claimed in-service stressor events in a PTSD claim. 38 C.F.R. § 3.304(f) (3), as added in 75 Fed. Reg. 39,843-852 (July 13, 2010). 

The Board notes that the amended 38 C.F.R. § 3.304(f) (3) relaxes the evidentiary standard for establishing in-service stressors in claims for PTSD. This revision adds to the types of PTSD claims that VA will accept through credible lay testimony alone as being sufficient to establish occurrence of an in-service stressor without undertaking other development to verify the Veteran's account. The primary effect of the amendment of 38 C.F.R. § 3.304(f) is the elimination of the requirement for corroborating evidence of a claimed in-service stressor if it is related to the Veteran's "fear of hostile military or terrorist activity" and provided that the claimed stressor(s) is(are) consistent with the places, types, and circumstances of the Veteran's service. In place of corroborating reported stressors, a medical opinion must instead be obtained from a VA, or VA contracted, psychiatrist or psychologist. The amendment to the regulation is effective, in pertinent part, for all claims pending at the Board on July 13, 2010. 

The Veteran can attest to factual matters of which he has first-hand knowledge, such as experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a lay person is competent to identify the medical condition, (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). In such cases, the Board is within its province to weigh that testimony and to make a credibility determination as to whether the evidence supports a finding of service incurrence and continuity of symptomatology sufficient to establish service connection. See Barr v. Nicholson, 21. Vet. App. 303 (2007). 

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. See 38 C.F.R. § 3.102. 

A. An acquired psychistric disorder.

After a review of the evidence of record, the Board finds that service connection for an acquired psychiatric disorder, including PTSD, anxiety and major depressive disorder, is not warranted. Among the diagnoses entered in this case is that of personality disorder. Significantly, following the examination in August 2014, the VA examiner stated the Veteran's psychiatric disorders included personality disorder with borderline and antisocial traits. The examiner stated that, as is common with cluster B symptoms, these can be improved in severity over time suggesting the usual course. He further noted that, while there appeared to be a temporary aggravation during military service, that is not the same as permanent aggravation and current status of these symptoms are improved again as is common comparted to military service issues. He added that, by definition, personality disorders, is developmental and cannot start or develop during a brief time in the military. Consequently, there is no entitlement under the law to service-connect this disorder. By regulation, personality disorders are not diseases or injuries for the purposes of service connection. 38 C.F.R. §§ 3.303(c), 4.9 (2014); see Winn v. Brown, 8 Vet. App. 510, 516 (1996); see also 38 C.F.R. § 4.130 (2014); American Psychiatric Association, Diagnostic and Statistical Manual for Mental Disorders (4th ed.). 

A claim of service connection for a personality disorder must be denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994); see also Beno v. Principi, 3 Vet. App. 439 (1992). The validity of the exclusion in 38 C.F.R. § 3.303(c) of congenital and development defects from the definition of disease or injury has been upheld. Winn, 8 Vet. App. at 510. To the extent that service caused superimposed injury, in other words, aggravated the personality disorder such that an acquired disorder was caused, this will be addressed below, as the post-service record does indicate a psychiatric diagnosis.

With regard to the Veteran's diagnosed PTSD with depressed mood, the Board finds that there is no probative evidence demonstrating that the Veteran has any acquired psychiatric disorder related to active service. While the Veteran was seen for anxiety and depression related to family problems in January 1982, there was no evidence of psychosis and he was cleared for service. No psychiatric disorder was noted at separation examination in June 1982. In addition, the Veteran's post-service medical records do not reflect any documentation of depression until August 2007, when he was referred for a psychological evaluation by the Disability Determination Office. In summary, there is a remarkable lack of evidence demonstrating any complaint or finding of a psychiatric disorder during the period from service discharge in 1982 until 2007. Moreover, the record does not include any evidence of a relationship between the current psychiatric disorder, diagnosed as PTSD with depressed mood and the Veteran's active service other than his own reports. 

Significantly, following a VA examination in August 2014, the examiner stated that PTSD was less likely than not related to, caused by, or permanently aggravated by events, experiences in the military beyond the usual course of the disorder and more likely than not related to trauma in childhood. Rather, the examiner attributed the Veteran's PTSD to reported abuse in childhood. He also noted that the Veteran reported a history of PTSD symptoms starting in childhood and continuing to the present time sufficient to qualify for PTSD diagnosis under DSM-IV-TR and DSM-V. The examiner also noted that depression and mood problems other DSM diagnoses and even adjustment disorder can co-exist with PTSD; the symptoms can be comingled as well so this is not consistent specially some providers did not have full history of abuse information. Further, anxiety disorder NOS at times appear to reflect his reports of PTSD symptoms that he reported when he has admitted to childhood trauma. 

The Board acknowledges the Veteran's contention that he has a current mental disorder that is related to his to his military service. There is no indication that the Veteran possesses the requisite medical knowledge or education to render a probative opinion involving medical diagnosis or medical causation. See Layno v. Brown, 6 Vet. App. 465 (1994). Consequently, the Veteran's own assertions as to the etiology of his PTSD with mood disorder have no probative value. Under these circumstances, the claim for service connection for an acquired psychiatric disorder, to include PTSD, anxiety disorder and major depressive disorder, must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not helpful to the claimant. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

B. Low back disorder.

After review of the evidentiary record, the Board finds that service connection is not warranted for a low back disorder, currently diagnosed as degenerative disc disease of the lumbar spine. Significantly, while the service treatment records reflect complaints of back pain October 1977 and again in August and September 1981, the remainder of the STRs are completely silent with respect to any complaints or findings of a chronic low back disorder. A medical history form prior to separation in June 1982 was also negative for any complaints of a back disorder. The first clinical documentation of the onset of a chronic back disorder is dated in November 1994, more than 12 years after service separation. (A significant lapse in time between service and post-service medical treatment may be considered as part of the analysis of a service connection claim. See generally Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000).) 

In addition, there is no persuasive evidence indicating that there is a relationship between the Veteran's current low back disorder and military service. Following the VA examination in July 2014, the VA examiner reviewed the medical records, and offered his opinion that the etiology of the Veteran's current back complaints is not supported by the current scientific literature. The examiner further stated that, based on the review of the above current medical literature, there is no scientific evidence that the low back condition is proximally due to the Veteran's service connected back injuries. Therefore, it is less likely as not that the Veteran's complaint of back pain is service connected from back injury. Rather, the examiner stated that, as the current scientific literature indicates multifactorial cause is the probable etiology of the Veteran's back pain. Consequently, the evidence does not support the Veteran's claim for service connection for a low back disorder, including degenerative disc disease of the lumbar spine. 

The Board acknowledges the Veteran's contention that he has a current low back disorder that is related to his to his military service. There is no indication that the Veteran possesses the requisite medical knowledge or education to render a probative opinion involving medical diagnosis or medical causation. See Layno v. Brown, 6 Vet. App. 465 (1994). Consequently, the Veteran's own assertions as to the etiology of his low back disorder have no probative value. 

Regarding continuity of symptomatology, the Board notes that where a chronic disease under 38 C.F.R. § 3.309(a) is shown, then service connection may be established solely based on credible lay evidence of continuity. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Here, at the VA examination, the Veteran appears to have endorsed continuous low back symptoms since service. In evaluating this contention, the Board notes that he expressly denied recurrent back on the report of medical history completed at separation in June 1982; no objective findings of back disability made at that time. This diminishes the probative value of his statements regarding continuity of symptomatology. Moreover, while there is evidence that the Veteran sought treatment for numerous disabilities between 1989 and 1993, no back complaints are seen in those records; had he been experiencing continuous low back problems it would be reasonable to expect that he would have raised complaints about this if he was in the practice of seeking treatment for other disorders. Overall, then, for these reasons, the Board rejects the evidence of continuity of symptomatology and finds that service connection is not warranted on that basis.

Given the absence of complaint or treatment until many years after service, and the absence of any credible evidence showing continuity of symptomatology since service, the Board finds that the evidence weighs against the Veteran's claim. As explained by the examiner, the Veteran's low back disorder is not the result of disease or injury incurred in or aggravated by service, and there is no evidence of a nexus between the post-service diagnoses and active service. As such, the Veteran's claim for service connection for a low back disorder, diagnosed as degenerative disc disease of the lumbar spine, must be denied. Because there is no approximate balance of positive and negative evidence, the rule affording the Veteran the benefit of the doubt does not apply. 38 U.S.C.A. § 5107(b) (West 2014); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); 38 C.F.R. § 3.102 (2014). 


ORDER

The application to reopen a claim of entitlement to service connection for bronchitis is denied. 

Service connection for an acquired psychiatric disorder, to include PTSD, anxiety disorder, and major depressive disorder, is denied. 

Service connection for a low back disorder is denied. 


REMAND

The Veteran seeks service connection for deafness (hearing loss) of the right ear. In particular, he claims that his hearing loss developed as a result of incidents of military service. After reviewing the claims folder, the Board concludes that additional development of his right ear hearing loss claim is necessary in order to comply with the VA's duty to notify and assist. See 38 U.S.C.A. §§ 5102, 5103, 5103A. 

At the separation examination in December 1977, clinical evaluation of the ears revealed old scarring from otitis on the right drum. Post-service, the Veteran underwent an audiological evaluation in November 2011, which revealed a finding of moderately severe mixed hearing loss in the right ear. 

VA's duty to assist requires it to provide a medical examination or obtain a medical opinion if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but (A) contains competent lay or medical evidence of a current diagnosed disability or persistent or recurrent symptoms of a disability; (B) establishes that the Veteran suffered an event, injury, or disease in service; and (C) indicated that the claimed disability may be associated with the in-service event, injury, or disease. 38 C.F.R. § 3.159(c) (4) (i) (2014). 

Evidence of a current diagnosed disability or persistent recurrent symptoms of a disability may be satisfied by medical or competent lay evidence. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); See also Barr v. Nicholson, 212 Vet. App. 303 (2007) (finding that lay testimony is competent to establish the presence of observable symptomatology). Thus, the mere fact that a Veteran filed a claim may be sufficient to satisfy the first element in providing an examination. 

Evidence of an event, injury, or disease in service is a classic factual assessment involving the weighing of facts. McLendon v. Nicholson, 20 Vet. App. 79, 82 (2006). A lack of contemporaneous medical records in service is not, on its own, a sufficient basis on which to find that such an event, injury or disease did not occur. See Buchanan v. Nicholson, 451 F.3d 1311 (Fed. Cir. 2006). A lay person is competent to provide evidence of that which they have actually observed, and is within the realm of personal knowledge. Layno v. Brown, 6 Vet. App. 465, 471 (1994). 

 Finally, the Board notes that the requirement that a disability "may be associated" with service is a "low threshold" standard. McLendon, 20 Vet. App. at 83. The law requires competent evidence of a disability or symptoms of a disability, but it does not require competent evidence of a nexus, only that the evidence indicated an association between the disability and service or another service-connected disability. Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Here, the Veteran has not been provided a VA examination in connection with his claim for deafness in the right ear. However, in light of the evidence of record, the Board is satisfied that the duty to provide such an examination has been triggered. 

To ensure that VA has met its duty to assist and to ensure full compliance with due process requirements, the case is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, D.C., for the following actions: 

1. Schedule the Veteran for a VA audiological examination. The VBMS records should be made available to the examiner for review before the examination. All appropriate tests and studies should be performed and all clinical findings reported in detail. Additionally, the examiner should elicit from the Veteran a thorough history of symptoms relating to his claimed right ear hearing loss. If, following a complete review of the Veteran's claims file and audiological testing, a medical diagnosis of hearing loss is given, the examiner should provide an opinion as to whether it is at least as likely as not (i.e., 50 percent probability or greater) that the Veteran's right ear hearing loss is associated with his military service. The examiner should provide a complete rationale for any opinion provided and support any opinion given with citation to evidence in the record, medical treatise evidence, or known medical principles. 

2. The AOJ should ensure that all requested actions have been accomplished in compliance with this remand. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. See Stegall v. West, 11 Vet. App. 268 (1998). 
 
3. Thereafter, the AOJ should readjudicate the Veteran's claim of entitlement to deafness in the right ear. If the determination remains unfavorable to the Veteran in any way, he and his attorney should be furnished a supplemental statement of the case (SSOC), which includes a summary of additional evidence submitted, and any additional applicable laws and regulations. The SSOC must provide reasons and bases for the decisions reached. Thereafter, the Veteran and his attorney should be given the opportunity to respond. 

After the above actions have been accomplished, the case should be returned to the Board for further appellate consideration, if otherwise in order. No action is required of the Veteran until he receives further notice. The purposes of this remand are to further develop the record and to the accord the Veteran due process of law. By this remand, the Board does not intimate any opinion, either factual or legal, as to the ultimate disposition warranted in this case. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This case must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014). 



____________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs